USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/17/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In Re:

PFIZER INC. DERIVATIVE
SECURITIES LITIGATION

-----------------------------------------------------------x

OPINION & ORDER
04 Civ. 10075 (RO)

Appearances:

Evan J. Smith, Brodsky & Smith, L.L.C., Mineola, NY, for lead plaintiffs.

Gregory A. Markel and Jason M. Halper, Cadwalader, Wickersham & Taft LLP, New York, NY, for defendants.

OWEN, District Judge:

Lead plaintiffs Marvin Freeman and Sylvia and Sanford Flinker, representing shareholders of Pfizer, Inc., have filed a derivative complaint alleging seven causes of action[1] against various current and former directors and officers of Pfizer.[2] Defendants moved to dismiss the complaint.

On a motion to dismiss, the Court must accept as true all material factual allegations in the complaint, *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 986 F.2d 196, 198 (2d Cir.1992), and may grant the motion only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir.1996); *see Conley v.*

---

[1] These causes of action include (1) breach of fiduciary duties, (2) aiding and abetting breach of fiduciary duties, (3) contribution and indemnification, (4) gross mismanagement, (5) waste of corporate assets, (6) unjust enrichment, and (7) disgorgement under Sarbanes-Oxley Act of 2002. In their brief in opposition, plaintiffs withdrew claims (2) and (7).

[2] Defendants include Chairman and CEO Henry McKinnell; directors Michael Brown, M. Anthony Burns, Robert Burt, W. Don Cornwell, William Gray, III, Constance Horner, William Howell, Stanley Ikenberry, George Lorch, Dana Mead, Franklin Raines, Ruth Simmons, William Steere, Jr., Jean-Paul Vallès; former directors Harry Kamen, George Harvey, Thomas Labrecque, Alex Mandl, John Niblack, Michael Sovern; and officers Constantine Clemente, Peter Corr, David Shedlarz, Karen Katen, and Jeffrey Kindler.

1

*Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In addition to the facts set forth in the complaint, the Court may also consider documents attached thereto and/or incorporated by reference therein, *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 67 (2d Cir.1998), as well as matters of public record, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir.1998), *cert. denied*, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999).

Plaintiffs allege in the complaint that defendants were aware of or should have been aware of, and did not disclose, cardiovascular risks associated with two blockbuster drugs, Celebrex and Bextra, and that defendants aggressively marketed and sold the drugs while they knew of serious risks. Pfizer launched Celebrex on December 31, 1998, achieving total global sales of $1.5 billion in 1999 and more in subsequent years. Bextra was launched on November 16, 2001 and achieved total global sales of $1.3 billion in 2004.

Plaintiffs allege that Pfizer should have been aware of potential cardiovascular issues based on clinical studies from 1999 and studies relating generally to Cox-2 inhibitors from 2000 and 2001.[3] Plaintiffs further allege that the defendants concealed negative information about Celebrex and Bextra while engaging in an extensive marketing campaign[4] and making public statements, SEC filings and press releases that referred to the two drugs. Plaintiffs also claim that the defendants were put on notice of the questionable cardiovascular risks of Celebrex due to the filing of class action lawsuits against the company starting in August 2001.

---

[3] Plaintiffs allege that the director defendants would have been aware of the information from these studies based on their "integral involvement in the business of the Company."
[4] Pfizer, according to the Complaint, spent over $400 million in direct-to-consumer advertising of Celebrex between 1999 and 2003, and "millions more" on Bextra.

2

The FDA eventually announced on December 9, 2004[5] that it would require a "black box" warning on Bextra regarding cardiovascular risks,[6] and on May 10, 2005, upon request by the FDA, Pfizer suspended sales of Bextra. The FDA asked Pfizer to discontinue direct-to-consumer marketing efforts for Celebrex on December 20, 2004, and in September 2005, Pfizer implemented "black box" warnings for future sales of Celebrex.

Against that background, plaintiffs filed this derivative action. Federal Rule of Civil Procedure 23.1 requires that a derivative plaintiff make a pre-suit demand on the board of directors to commence the action, or plead particularized facts demonstrating that demand was excused as futile.[7] Plaintiffs in this case made no demand on Pfizer's board; instead, they plead facts to demonstrate that demand was futile.

Plaintiffs claim that the 15 members of the Board who were directors when the original complaint was filed on December 21, 2004[8] either had a disabling interest or lacked independence. They claim, *inter alia*, that demand on these directors was futile because certain of them:

1) Participated in or permitted wrongful conduct, and thus are liable (entire board),
2) Admittedly lack independence (McKinnell and Steere),
3) Personally profited from illegal insider trading (Burt, Gray, Howell, Horner, Lorch, McKinnell, Steere and Vallès),
4) Have longstanding business tie to Pfizer and served as an employee for several decades (Vallès),

---

[5] The complaint claims this date is December 9, 2005, Compl. ¶ 142, but the preceding and subsequent paragraphs suggest the actual date was December 9, 2004.
[6] According to the complaint, a black box warning is the "strongest kind" of warning. Compl. ¶ 136.
[7] The demand requirement reflects the "basic principle of corporate governance that the decisions of a corporation–including the decision to initiate litigation–should be made by the board of directors or the majority of shareholders." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991).
[8] Those directors are Henry McKinnell, Michael Brown, M. Anthony Burns, Robert Burt, W. Don Cornwell, William Gray, Constance Horner, William Howell, Stanley Ikenberry, George Lorch, Dana Mead, Franklin Raines, Ruth Simmons, William Steere and Jean-Paul Vallès.

3

5) Were members of the Board's Science and Technology Committee (Brown, Ikenberry and Raines),
6) Were *not* members of the Board's Compensation Committee (Brown, Burt, Cornwell, Gray, Horner, Howell, Ikenberry, McKinnell, Simmons, Steere and Vallès),
7) Received compensation for service on the Board (entire board),
8) Were members of the Board's Corporate Governance Committee (Brown, Gray, Horner, Ikenberry and Simmons),
9) Were *not* members of the Corporate Governance Committee (Burns, Burt, Cornwell, Howell, Lorch, McKinnell, Mead, Raines, Steere and Vallès),
10) Failed to follow corporate policy (Brown, Burns, Burt, Cornwell, Gray, Horner, Howell, Ikenberry, Lorch, McKinnell, Mead, Raines, Simmons, Steere and Vallès),
11) Were members of the Board's Audit Committee (Burt, Cornwell, Howell and Vallès); held a large amount of stock and stock options (entire board), and
12) Had personal and professional relationships (Burns, Gray, Howell, Horner, Lorch and McKinnell)

The substance of the demand requirement comes from the law of the state of incorporation, which is Delaware. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96-99 (1991). Generally, in Delaware demand is futile when the allegations raise a reasonable doubt as to either (i) director disinterest or independence, or (ii) whether the directors exercised proper business judgment in approving the challenged transaction. *Grobow v. Perot*, 539 A.2d 180, 186 (Del. 1988).[9] Because plaintiffs here do not challenge a specific transaction, but rather allege fault based on the board' lack of action, demand is excused when "the particularized factual allegations of a derivative shareholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

---

[9] The goal of this inquiry is to determine whether the Board's action should be entitled to the protection of the business judgment rule. *Grobow*, 539 A.2d at 186. This determination of "reasonable doubt" is fact-specific. *Id.*

4

A director is interested when he will receive a personal financial benefit from a transaction that is not equally shared by the corporation, or when a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders. *Id.* at 936. And a director is not independent if his decision is not "based on the corporate merits of the subject before the board rather than extraneous considerations or influence," *id.*; or if he is dominated or otherwise controlled by or beholden to an individual or entity interested in the conduct or transaction at issue. *Grobow*, 539 A.2d at 189. Plaintiffs must show that at least eight of the 15 who were directors in December 2004 either had a disabling interest or lacked independence.

Plaintiffs have failed to sufficiently allege that a majority of directors had a disabling interest. First, they claim that the directors are potentially liable as a result of this litigation, and that certain of the directors personally profited from sales of company stock. The underlying case, at least as to the directors, is a "failure to prevent" case, where plaintiffs charge that the defendants did not prevent the company from marketing and selling Celebrex and Bextra. Directors who are sued for such a failure have a disabling interest that excuses demand only when the potential for liability rises to a "substantial likelihood." *In re Baxter International, Inc. Shareholders Litigation*, 654 A.2d 1268, 1269 (Del. Ch. 1995). The complaint must plead with particularity the "danger signs" that were ignored or "additional measures" the directors should have taken. *Id.* at 1271.[10]

This standard is not met by the complaint. Defendants have put into the record a provision in the company's Certificate of Incorporation that exempts directors from

---

[10] *See also Fink v. Komansky*, 2004 WL 2813166 (S.D.N.Y. 2004) (complaint did not plead demand excusal with particularity where it failed to allege director defendants' role in or knowledge of corporate wrongdoing).

5

personal liability to the fullest extent permitted by the Delaware General Corporation Law.[11] Those aspects of the complaint that do not implicate any exceptions to this certificate provision (e.g., allegations of violations of duty of care) would not be reason for disabling director interest. Further, the complaint does not set forth directors' knowledge of the problems with Celebrex or Bextra or allege obvious danger signs. There are claims about studies that plaintiffs purport indicate that there were cardiovascular risks associated with the drugs, but nothing to show the director defendants knew or that the studies, in fact, revealed material risks or raised material questions about the drugs' safety profiles or sales potential.[12]

Second, for the claims of personal profit, mere ownership of stock or options does not render a director interested for purposes of demand futility. *See, e.g., In re Rexene Corp. S'hodlers Litig.*, 1991 WL 77529, at *3 (Del. Ch. May 8, 1991) *aff'd*, 604 A.2d 416 (Del. 1991). The complaint also alleges that eight directors sold Pfizer stock during the relevant period. Compl. ¶ 192. However, plaintiffs fail to allege particularized facts demonstrating defendants possessed material non-public information when the sales were made. *See Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003). Third, membership on the Board's Audit Committee does not make these directors interested for demand purposes.

---

[11] Restated Certificate of Incorporation of Pfizer Inc. in Halper Affidavit at Exhibit C. Delaware law allows shareholders to adopts certificate provisions eliminating or limiting directors' personal liability to the corporation nor stockholders for monetary damages for breaches of fiduciary duty, except for a) breaches of the duty of loyalty, b) acts or omissions not in good faith or that involve intentional misconduct or a knowing violation of law, c) unlawful payments of dividends and unlawful stock purchases and redemptions, and d) any transaction where the director derived an improper personal benefit. Del. Code Ann. tit. 8, § 102(b)(7).

[12] The complaint does, however, make conclusory statements about director knowledge, such as that they "were on notice, from at least 1999, of significant, demonstrable cardiovascular issues associated with Cox-2 inhibitors." Compl. ¶4. The complaint notes that there "were at least four (4) studies available to Defendants that confirmed that the entire class of Cox-2 inhibitors was subject to legitimate concerns regarding their cardiovascular safety profile." *Id.* (emphasis added).

6

Plaintiffs here allege that the Committee approved the Company's Annual Reports from 1999 to 2004, but they fail to state any inaccuracies in the financial statements.

Plaintiffs have also failed to allege that a majority of directors lacked independence. To excuse demand for lack of independence, there must "be coupled with the allegations of control such facts as would demonstrate that through personal or other relationships the directors are beholden to the [interested] person." *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Each fact that plaintiffs claim makes certain directors interested has been previously rejected by courts that considered the issue.

Those directors not on the Compensation Committee and those who were paid for board service do not lack independence by way of their service or compensation. *See Grobow*, 539 A.2d at 188; *Caviness v. Evans*, 229 F.R.D. 354 (D. Mass. 2005) (applying Delaware law). Further, Pfizer's public documents show that the Compensation Committee is responsible for setting the compensation of the CEO and other elected officers, not the directors. 2005 Proxy Statement at 16. Similarly, those directors not on the Corporate Governance Committee are not beholden to the Corporate Governance Committee members. Board members are elected by the shareholders, who also have the power to remove directors. The Corporate Governance Committee does not have the final say on such matters. *See* Del. Code Ann. tit. 8, § 141(k) (2005); *Stroud v. Milliken Enters., Inc.*, 585 A.2d 1306 (Del Ch. 1988), *appeal dismissed*, 552 A.2d 476 (Del. 1984).

Jean-Paul Vallès, who was a Pfizer employee for many decades, does not lack independence by way of his former employment. *See In re Walt Disney Co. Deriv. Litig.*,

7

731 A.2d 342 (Del. Ch. 1998), *aff'd in part, rev'd in part sub. nom. Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Vallès's employment with Pfizer ended in 1992, 12 years before this litigation began. Finally, allegations of mere personal and professional relationships among board members do not raise doubt about their independence. *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040 (Del. 2004). For presuit demand purposes, "friendship must be accompanied by substantially more in the nature of serious allegations that would lead to a reasonable doubt as to a director's independence." *Id.* at 1052.

Each of these factors has been rejected as a basis for demand futility in the past. *See supra.* The Court must examine the totality of the circumstances, *Harris v. Carter*, 582 A.2d 222 (Del. Ch. 1999), but I do not see how aggregating a number of factors, none of which excuses demand, can somehow excuse demand.

Accordingly, defendants' motion to dismiss is granted in its entirety because plaintiffs failed to demand that Pfizer's board of directors institute suit against the defendants.

So ordered.

Dated: July 17, 2007
New York, NY

_____
United States District Judge