```
07-3547-cv
In re Pfizer Inc.
```

1
2                    UNITED STATES COURT OF APPEALS
                          FOR THE SECOND CIRCUIT

3                              SUMMARY ORDER

4  RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO SUMMARY ORDERS FILED
5  AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1 AND
6  FEDERAL RULE OF APPELLATE PROCEDURE 32.1. IN A BRIEF OR OTHER PAPER IN WHICH A LITIGANT
7  CITES A SUMMARY ORDER, IN EACH PARAGRAPH IN WHICH A CITATION APPEARS, AT LEAST ONE CITATION
8  MUST EITHER BE TO THE FEDERAL APPENDIX OR BE ACCOMPANIED BY THE NOTATION: "(SUMMARY ORDER)."
9  UNLESS THE SUMMARY ORDER IS AVAILABLE IN AN ELECTRONIC DATABASE WHICH IS PUBLICLY ACCESSIBLE
10 WITHOUT PAYMENT OF FEE (SUCH AS THE DATABASE AVAILABLE AT HTTP://WWW.CA2.USCOURTS.GOV), THE
11 PARTY CITING THE SUMMARY ORDER MUST FILE AND SERVE A COPY OF THAT SUMMARY ORDER TOGETHER
12 WITH THE PAPER IN WHICH THE SUMMARY ORDER IS CITED. IF NO COPY IS SERVED BY REASON OF THE
13 AVAILABILITY OF THE ORDER ON SUCH A DATABASE, THE CITATION MUST INCLUDE REFERENCE TO THAT
14 DATABASE AND THE DOCKET NUMBER OF THE CASE IN WHICH THE ORDER WAS ENTERED.

15      At a stated term of the United States Court of Appeals for the
16      Second Circuit, held at the Daniel Patrick Moynihan United States
17      Courthouse, 500 Pearl Street, in the City of New York, on the
18      27th day of January, two thousand nine.

19      PRESENT:

20                HON. ROBERT D. SACK,
21                HON. SONIA SOTOMAYOR,
22                HON. ROBERT A. KATZMANN,

23                          Circuit Judges.

24      ------------------------------------

25      IN RE: PFIZER, INC. DERIVATIVE
26      SECURITIES LITIGATION

27      MARVIN FREEMAN, SANFORD FLINKER,
28      SYLVIA G. FLINKER, JAMES BAKER and
29      MARILYN CLARK,

30                     Plaintiffs-Appellants,

31           - v -                                              No. 07-3547-cv

32      HENRY A. MCKINNEL, WILLIAM C. STEERE
33      JR., JEAN-PAUL VALLES, MICHAEL S.
34      BROWN, STANLEY O. IKENBERRY,
35      FRANKLIN D. RAINES, M. ANTHONY
36      BURNS, ROBERT N. BURT, W. DON



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: FEB 1 9 2009

Issued as Mandate:

CORNWELL, WILLIAM H. GRAY, CONSTANCE J. HORNER, WILLIAM R. HOWELL, GEORGE A. LORCH, DANA G. MEAD, RUTH J. SIMMONS, CONSTANTINE L. CLEMENTE, PETER B. CORR, GEORGE P. HARVEY, HARRY P. KAMEN, KAREN KATEN, JEFFREY B. KINDLER, THOMAS G. LABRECQUE, ALEX J. MANDL, DAVID SHEDLARZ, MICHAEL I. SOVERN, and JOHN F. NIBLACK,

<u>Defendants-Appellees</u>,

PFIZER INC., a Delaware Corporation,

<u>Nominal-Defendant-Appellee</u>.

------------------------------------

Appearing for Appellants:   Evan J. Smith, Brodsky & Smith, LLC, Mineola, NY.

Appearing for Appellees:    Gregory A. Markel (Jason M. Halper, Ryan J. Andreoli, <u>of counsel</u>), Cadwalader, Wickersham & Taft LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Richard Owen, <u>Judge</u>).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the district court be, and it hereby is, AFFIRMED.

Lead plaintiffs Marvin Freeman, Sanford Flinker,[1] and Sylvia Flinker, who represent the plaintiff shareholders in related derivative suits against Pfizer, Inc. that were consolidated by the Panel for Multi-District litigation, appeal from a judgment against them based on an order of the United States District

---

[1] At oral argument, counsel for plaintiffs informed the Court that Mr. Flinker had passed away and that his shares in Pfizer had been transferred to Sylvia Flinker. Because Mr. Flinker continues to be listed in the official caption to the case, and no motion has been made to substitute his estate or a personal representative as a party, we continue to list him among the plaintiffs. <u>See</u> Local Rule 43(a)(1).

Court for the Southern District of New York granting the defendants' motion to dismiss this action. We assume the parties' familiarity with the facts and procedural history of this case, and the issues presented on this appeal.

The plaintiffs allege that the defendants, former directors and officers of Pfizer, were, or should have been, aware of significant cardiovascular risks associated with two of Pfizer's highly successful Cox-2 inhibitor arthritis drugs, "Celebrex" and "Bextra," and that they nonetheless permitted Pfizer to continue to market and sell these drugs aggressively, ultimately leading to hundreds of product liability or consumer fraud lawsuits and causing significant losses to Pfizer's market capitalization. The plaintiffs filed a shareholder derivative suit against the defendants, proffering several theories of liability including breach of fiduciary duty, gross mismanagement, and waste of corporate assets. The district court dismissed the complaint pursuant to Federal Rule of Civil Procedure 23.1 on the ground that the plaintiffs had failed to make a demand on the Board of Directors of Pfizer (the "Board") to initiate suit on behalf of the company, and had not pled facts sufficient to establish that such demand would be futile.

Rule 23.1(b) provides: "The complaint must . . . state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority, and . . . the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1. The parties agree that since Pfizer is incorporated in Delaware, whether the demand requirement has been met is a question of Delaware law. See Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133, 138 (2d Cir. 2004).

We conclude that the alleged bases for demand futility are not sufficient to establish that there was a reasonable doubt that a majority of the Board "could have properly exercised its independent and disinterested business judgment in responding to a demand" at the time the complaint was filed allowing demand to be excused. Rales v. Blasband, 634 A.2d 927, 934 (Del. 1993). We therefore affirm the judgment of the district court.

Plaintiffs' Allegations

In order to successfully plead demand futility, the plaintiffs must plead facts that, if proved, would demonstrate that a majority of board members, eight directors in this instance, were either not disinterested or lacked independence. The defendants concede that two defendants, McKinnell and Steere, are not disinterested. The plaintiffs must therefore

successfully plead demand futility with regard to six other defendants in order to maintain this action. The plaintiffs have failed to do so.

"[T]he mere threat of personal liability . . . is insufficient to challenge either the independence or disinterestedness of directors and . . . a reasonable doubt that a majority of directors is incapable of considering demand should only be found where a substantial likelihood of personal liability exists." Wood v. Baum, 953 A.2d 136, 141 n.11 (Del. 2008) (alteration in original) (internal quotation marks omitted). Where, as here, the defendant directors are contractually "exculpated from liability for certain conduct, then a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim." Id. at 141 (internal quotation marks and emphasis omitted).

Pfizer's shareholders, pursuant to Del. Code. Ann. Tit. 8, § 102(b)(7) (2006), limited the directors' liability to the full extent permitted by Delaware Law. "Such a provision can exculpate directors from monetary liability for a breach of the duty of care, but not for conduct that is not in good faith or a breach of the duty of loyalty." Stone ex Rel. AmSouth Bancorporation v. Ritter, 911 A.2d 362, 367 (Del. 2006). This sets a higher threshold for the plaintiffs, because pleading a substantial likelihood of personal liability for a breach of good faith or the duty of loyalty requires the plaintiffs to allege different, and more culpable, conduct than necessary for a breach of the duty of due care. Id. at 369. We conclude that the plaintiffs allegations, do not meet that higher threshold.

<u>Presumption of Knowledge by the Defendants of the Results of Certain Studies</u>

The plaintiffs' allegations relating to personal liability each revolve around an asserted presumption that the defendant directors had knowledge of the drugs' cardiovascular risks. The plaintiffs point to several sources where this knowledge would have come from. They cite a 1999 Pfizer internal clinical study on elderly Alzheimer's patients that allegedly suggested heightened cardiovascular risks of Celebrex, and several published studies raising questions as to risks raised by Cox-2 inhibitors and calling for their assessment by drug companies. The plaintiffs also refer to lawsuits brought between 2001 and 2005 relating to the cardiovascular risks of Celebrex and Bextra. The plaintiffs would have the Court conclude on the basis of the defendant directors' presumed knowledge of these studies that the defendant directors were "interested" directors because they were therefore aware of their substantial exposure to the risk of

personal liability for a breach of their fiduciary duties. The plaintiffs argue that this knowledge should be presumed because it relates to a "core" activity of Pfizer, and courts have often presumed knowledge of information that relates to "core" activities of a corporation.

The plaintiffs have not cited any Delaware authority that would permit a court to infer from the existence of scientific studies within a corporation, without more, that the corporation's directors had knowledge of their existence and import. There is no legal basis for a conclusion here that, amidst the innumerable studies that Pfizer would likely have conducted on innumerable subjects, the existence of one that may have found cardiovascular risks related to Celebrex was necessarily known by all members of the Board simply because it existed and was related to Pfizer's "core" business. And without such an inference, the plaintiffs have alleged no facts that would lead to the conclusion that the defendants had such knowledge.

Nor have the plaintiffs established that defendants should be presumed to have known of published studies. In support of their proposition that knowledge of the studies should be presumed, the plaintiffs cite only one case that deals with demand futility under Delaware law, In re Biopure Corp. Derivative Litig., 424 F. Supp. 2d 305 (D. Mass. 2006). But the information of which the Biopure court presumed knowledge, an FDA clinical hold on a key drug for the company, was far more important, definitive, and central to the business prospects of the company than were the studies at issue here. Id. at 307-08.

The other cases that the plaintiffs cite for the proposition that we should presume the Board members' knowledge of the internal and published studies similarly refer to situations involving information of far greater magnitude than those at issue here. Moreover, they were not decided under Delaware law, and involved not demand futility inquiries, but circumstances giving rise to a strong inference of scienter in securities fraud claims. See, e.g., Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989); Epstein v. Itron, Inc., 993 F. Supp. 1314, 1327 (E.D. Wash. 1998) abrogated on other grounds by In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 974 (9th Cir. 1999). We do not view this authority as persuasive here. Demand futility inquiries are different from inquiries as to scienter and fraud. For example, scienter is a question of knowledge; demand futility, at least in the present context, requires both a showing of knowledge and that the knowledge created an affirmative duty to act, which the directors consciously ignored. See Stone, 911 A.2d at 369.

Because of the differences between scienter and demand futility inquiries, the lack of Delaware case law supporting presuming such knowledge in demand futility inquiries, and the relative unimportance of the studies at issue here as compared with the importance of the information dealt with in the cited cases, we conclude that the plaintiffs' pleaded facts do not give rise to a presumption that defendant directors had knowledge of these studies. Even were we to presume such knowledge, however, plaintiffs have not adequately pleaded that such knowledge would have given rise to a duty to act that defendants would have necessarily been aware of and consciously disregarded, such that a breach of the duty of good faith would be established.

We conclude that the plaintiffs' claim that a majority of the Board was not disinterested due to a substantial likelihood of personal liability arising out of knowledge of scientific studies fails.

### Members of the Audit Committee

The plaintiffs' allegations that members of the Audit Committee were not disinterested also are insufficient. Insofar as these assertions relate to the defendants' failure to monitor the financial books and records of the company, they would appear to be claims of breaches of the duty of care for which the defendants are not subject to personal liability under Delaware law and Pfizer's corporate charter. See Stone, 911 A.2d at 367.

Nor do the plaintiffs allege with particularity any accounting misstatements that would be a basis for a claim of securities fraud against the committee members. And in any event, the claims appear to be premised improperly on presumed knowledge of the cardiovascular risks, and failure to adjust the books accordingly.

The plaintiffs have failed in any event to plead that defendants knew that these studies in effect revealed incorrect or misleading financial statements and that the defendants, therefore, had a substantial likelihood of personal liability for securities fraud. As the Delaware Supreme Court has held, allegations of membership on an audit committee combined with conclusory allegations of financial misstatements by the company are not sufficient to plead demand futility. Wood, 953 A.2d 136.

### Members of the Science and Technology Committee

We do not decide whether the members of the Science and Technology Committee are disinterested because the disqualification of the three of them would not be sufficient

basis for a finding that a majority of Board members was either interested or lacked independence such that demand would be futile.

### Insider Trading

The plaintiffs' allegations regarding insider trading lack the requisite particularity, because the timing of the sales they cite does not support an inference of illegal insider trading. All of them, except for the sales by the defendants conceded to be interested and by defendant Vallès, which we discuss below, occurred in 2000 and 2001. The plaintiffs give no reason why their timing suggests trading on the basis of inside information. The only nonpublic information the plaintiffs point to is the 1999 clinical study. There is no reason we can perceive upon which to conclude, on the facts pleaded by the plaintiffs, that these defendant directors had knowledge of this study. The plaintiffs have therefore failed to plead facts upon which a court could conclude that the timing of these defendants' sales of Pfizer stock were questionable, or that the directors would have been in possession of material nonpublic information trading upon which would have given rise to a viable insider trading claim rendering these defendants interested.

### Defendant Vallès

Because an analysis of the insider trading allegations relating to defendant Vallès's securities trading is more complicated and does not affect the outcome of this appeal, we forgo it. We assume for the purposes of this decision that he was neither disinterested nor independent.

### Longstanding Personal and Professional Ties

The plaintiffs also argue that longstanding personal and professional ties between Board members, including Vallès, show that these defendants lacked independence. It is well established under Delaware law that the number of years that defendants have served on a board or multiple boards together cannot suffice as a basis to successfully plead a lack of independence for demand futility purposes. See, e.g., In re Walt Disney Co. Deriv. Litig., 731 A.2d 342, 357 (Del. Ch. 1998), reversed on other grounds sub. nom, Brehm, 746 A.2d at 244; Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart, 845 A.2d 1040, 1049 (Del. 2004).

### Denial of the Plaintiffs' Motion to File Amended Complaint

Following the district court's dismissal, the plaintiffs sought leave to amend their complaint. The district court asked the plaintiffs to provide the information with which they would amend their complaint, such that amending the complaint would not be futile. The plaintiffs stated that they would "further illustrate" the alleged suspicious trading activity relating to their insider trading allegations, and that they had new evidence from a related class action of actual accounting improprieties, which would relate to their claims regarding the Audit Committee members. The district court denied the plaintiffs' request for leave to amend.

We find no abuse of discretion in the district court's denial of leave to file an amended complaint, <u>Bellikoff v. Eaton Vance Corp.</u>, 481 F.3d 110, 118 (2d Cir. 2007), because the proposed new allegations would be no more than variations on the allegations already adjudged to be inadequate by the court, and because more detailed accounts of financial improprieties would not save plaintiffs failure to plead interestedness on behalf of the Audit Committee members, thus making amendment futile. <u>See City of New York v. Smokes-Spirits.Com, Inc.</u>, 541 F.3d 425, 452 (2d Cir. 2008).

<u>Conclusion</u>

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of the Court

By: *[signature]*

A TRUE COPY
Catherine O'Hagan Wolfe, Clerk
by _____
DEPUTY CLERK